### No. 27232

**Wood Bros. Homes, Inc., a Delaware corporation v. City of Colorado Springs, a municipal corporation of the State of Colorado, and the City Council of the City of Colorado Springs**

(568 P.2d 487)

Decided September 6, 1977.

544

Spurgeon, Haney & Howbert, Gregory R. Piche; George Alan Holley & Associates, George Alan Holley, for plaintiff-appellee.

Gordon D. Hinds, City Attorney, James G. Colvin II, Assistant, Jackson L. Smith, Deputy, for defendants-appellants.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Plaintiff-appellee Wood Bros. Homes, Inc. sought relief in the trial court from a condition imposed by the city council of Colorado Springs prior to granting final approval of a subdivision plat. The trial court granted the relief and the city appeals. We affirm.

Wood Bros. owns 294 acres of undeveloped land within the city and sought approval of a subdivision plat for 117 acres. The city council refused to approve the plat because Wood Bros. was unwilling to advance or guarantee payment of $282,000 as front end money for the construction of a major drainage channel. Ordinances authorize the city to collect funds for construction of drainage facilities from subdevelopers as a condition of plat approval. The pertinent ordinance provisions follow:

"13-30. *Purpose* — The Council hereby finds, determines and declares the urgent necessity of providing storm sewers and other facilities for the drainage and control of flood and surface waters within areas and territories to be subdivided and developed and the Council further finds and declares that said facilities are required for the proper and orderly development of said areas and territories in order that storm and surface waters may be properly drained and controlled and that the health, property, safety and welfare of the City and its citizens may be safeguarded and protected. (Ord. 2841, Sect. 2)

"13-31. *Owner and Developer to Provide Drainage Facilities* — The Council further finds, determines and declares that it is necessary under all the attendant circumstances that the owner and developer of the subdivision shall provide the drainage and control of surface water within his subdivision and also to provide the facilities required to convey such drainage waters to such outflow or discharge point as shall be indicated in the master drainage plan for the drainage basin and area within which the subdivision is located. (Ord. 2841, Sect. 3)

\* \* \* \*

"13-36. *Owner to Prepare Detailed Plans* — Prior to the final approval of the plat of a subdivision, or a designated portion thereof, the owner or developer of said subdivision, or part thereof for which final approval is requested shall at his expense prepare detailed plans and specifications for the construction and installation of [channels, conduits, reservoirs, culverts, bridges, easements and] *all drainage facilities for the control and drainage of surface water within said subdivision, or the part thereof to be approved and the carriage of such water to the discharge or outflow point, all in conformity with the master plan of the drainage basin as approved by the City,* together with the estimated costs of constructing these facilities. Said plans and costs estimates shall be reviewed by the Director of Public Works and upon his approval of the same, the plat or portion thereof involved may be given final approval by the Council subject to acceptable assurance to the City that the facilities will be constructed and installed as indicated and approved; provided, however, that such assurance may if desired be furnished after final approval of the plat upon the condition that said plat be not finally executed or recorded until said assurance is furnished."

"If undue hardship would result to the owner or developer by reason of the carriage of the water to the ultimate discharge or outflow point as shown on the master plan, the Subdivision Storm Drainage Board may designate another discharge or outflow point at which said water will be received by an open channel or other minimum or substitute facility to carry the water. (Ord. 2841, Sect. 9)"

The object of this dispute is a proposed major drainage channel, which would be 6,000 feet in length, and which Wood Bros. would have to

construct to comply with the outflow point designated by the city engineer. This outflow point is shown as point "C" on Exhibit A, which is a map of the drainage master plan. Two outflow points, referred to as points "A" and "B" on the map, are much closer to the proposed subdivision. Outflow point "C" is at the southwest corner of Wood Bros. *unplatted* land, and is a considerable distance from the platted subdivision. Wood Bros. protested the choice of point "C" and appealed the city engineer's decision to the drainage board and to city council where it also sought a variance as permitted by Ordinance § 13-36, *supra.* The drainage board and the city council upheld the city engineer's designation of point "C." Wood Bros. then initiated trial court action seeking a reversal of the city's refusal to grant a variance.

After review, the trial court made findings of fact, a summary of which follows.

Sixty acres of the Wood Bros. holding are topographically inappropriate for development and seventy-seven acres are unavailable for development pending determination of their zoning. Another forty acres, including the location of the proposed major drainage channel needed to convey water to outflow point "C," have been reserved for use by the city for a north-south arterial highway (Union Boulevard extension) and traffic buffering zone. A major drainage channel is presently necessary to protect occupants of the entire drainage basin from occasional flooding and the effects of the "one hundred year flood" — whether or not Wood Bros. develops its proposed subdivision. When completed, only 2% of the effluent in the channel would be generated by the proposed subdivision; only 5% of the effluent would come from the entire Wood Bros. property.

Based on these facts, the trial court concluded that the drainage channel is a public utility, because it is for the benefit of all property within the drainage basin. The cost to construct the channel was established to be $282,000, all of which the city demanded from Wood Bros. before it would grant plat approval for the subdivision. Wood Bros. is willing to accept responsibility for conveying the subdivision's drainage to the main channel at points "A" and "B" and to pay for its pro rata share, based on its share of the benefits, of the construction of the major drainage channel.

The trial court held that the city's interpretation of its ordinances was unconstitutional because it authorized "a taking of private property for public purpose without just compensation or due process of law" and because there is no rational relationship between the benefit attributable to the burdened property and the size of the burden. The trial court also ruled that the unconstitutionality of the city's interpretation was not remedied by the rebate ordinance, which was itself unconstitutionally vague and indefinite. Finally, the trial court found that the city's denial of Wood Bros.' request for a variance from the drainage ordinance was "arbitrary,

capricious and beyond its jurisdiction."

On appeal, the city maintains that the ordinances represent a valid and rational exercise of the police power, and that the city's interpretation of them is not unconstitutional. The city also refutes Wood Bros.' claim of undue hardship by pointing out that Wood Bros. is willing to spend $896,000 for public services but resists paying the additional $282,000 which must be spent to prevent harm to the property of others which would result from its development of the subdivision. It further asserts that the city's demand does not prevent development of the subdivision since those costs may be passed along to homeowners or may be recouped under the credit provision of the following ordinance:

"13-37. *Owner May Be Credited for Facilities* — Upon the completion and acceptance of the drainage facilities for a subdivision as required by this ordinance, the Unit Drainage Fees payable by the owner or developer of the subdivision upon the land in the subdivision or that portion thereof upon which final approval has been given and to which said facilities are applicable, will be computed, and if the amount of said fees is less than the cost of providing the aforesaid facilities, the owner or developer shall be entitled to a credit from the appropriate sub-fund of the basin involved of the Subdivision Storm Drainage Fund in an amount that the cost of providing said facilities exceeds the fees payable by said owner or developer; provided, however, that if the final approval is applicable to only a portion of the subdivison or tract or tracts of land owned by the developer, and located within the drainage basin, at the option of said developer, the credit for the cost of the facilities' installation in excess of the applicable fees for the portion so approved may be applied upon and credited to the drainage fees upon the balance of the said subdivision . . . provided that said developer furnished the Subdivision Storm Drainage Board satisfactory evidence that the developer owns the subdivision . . ."

■ We agree with the trial court that the city exceeded the authority of its ordinances and abused its discretion in refusing to grant a variance from this disproportionate, unfair demand. We do not agree that the trial court went outside the record to gain a basis for its holding that the city council abused its discretion when it refused to grant a variance, as contended by the city on this appeal. The record amply supports this holding. We do not reach the constitutional issues raised.

### I. *Excess of Jurisdiction*

■ Urban areas face severe water drainage problems due to their vast areas of impermeable surface. The police power authorizes home rule cities, such as Colorado Springs, to pass ordinances to alleviate such local problems. *Colo. Const.* Art. XX, § 6. *Cf., Apple v. City and County of Denver*, 154 Colo. 166, 390 P.2d 91 (1964). *See generally*, Shoemaker, "An Engineering-Legal Solution to Urban Drainage Problems," 45 *Denver L.J.* 381 (1968). However, the authority granted by such ordi-

nances may not be exceeded as was done by the city in this case. *Cf., Aurora v. Bogue*, 176 Colo. 198, 489 P.2d 1295 (1971).

■ No language in the ordinances requires a developer, under the facts here, to bear the entire cost of improving existing facilities or constructing new facilities which serve an area far greater than the subdivision. The credit provision of the ordinances does not remedy this attempt to coerce Wood Bros. into financing a currently needed project of general benefit. At best, the credit provision furnishes a long-postponed remedy, uncertain of performance.

## II. *Abuse of Discretion*

■ We find that the city abused its discretion in refusing to allow a variance from the city engineer's designation of point "C." Section 13-36, *supra*, provides that the drainage board may designate an alternative outflow point if the original selection causes undue hardship. Undue hardship has been defined as unnecessary or unjust hardship. *Beerman v. City of Kettering*, 14 Ohio Misc. 149, 237 N.E.2d 644 (1965); *Black's Law Dictionary*, p. 1697.

■ *Beerman v. City of Kettering, supra*, examined the issue of whether literal enforcement of a zoning ordinance would work "a substantial and unnecessary injustice." After so finding, that court next discussed the proposition of whether the unjust measure was necessary to carry out the purpose of the ordinance. In effect, that court balanced individual hardship against public benefit. We adopt this calculus, and conclude that the city's interpretation caused an undue hardship which was also unjust, unnecessary, and could be remedied by granting a variance as allowed by the ordinances.

While financial detriment is not *alone* enough to establish undue hardship, additional facts make it clear that this is a hardship case. *See Stice v. Gribben-Allen Motors, Inc., Parsons*, 216 Kan. 744, 534 P.2d 1267 (1975). The assessment of the entire cost of the major drainage channel upon Wood Bros. is obviously unfair under the facts of this case. The significant factor found by the trial court is that the area to be served by the major drainage channel already suffers from occasional flooding and needs this expanded drainage facility regardless of whether Wood Bros. eventually develops its property.[1]

Imposition of the total cost on Wood Bros. is unnecessary because there are other methods of raising revenue for public improvements.

---

[1]One councilman who subsequently voted to grant the variance indicated, without challenge, that the council would consider itself "stuck" if Wood Bros. were to decide not to develop:
"[I]f Wood Bros. decides they don't want to develop we could sit here for twenty years saying we want that drainage structure, but we· are not going to do it until we can stick somebody with the front end money, isn't that right? Do we need the ordinance? We are going to just wait and wait and outlast Wood Brothers and they'll just not develop it . . ." [ff. 62-68, Item 25, p. 15, City Council hearings]

The judgment of the trial court is affirmed, but only to the extent that its judgment is premised on the ruling that the city exceeded the authority of its ordinances, and also, that the city council abused its discretion in refusing to grant the variance sought by Wood Bros.