763 P.2d 292 (1988)
Marvin SHERMAN and Marie Sherman, Petitioners,
v.
The CITY OF COLORADO SPRINGS PLANNING COMMISSION and The City Council of the City of Colorado Springs, Respondents.
No. 86SC306.
Supreme Court of Colorado, En Banc.
October 17, 1988.
Rehearing Denied November 7, 1988.
*293 Kane & Donley, Hayden W. Kane, Mark H. Kane, Colorado Springs, for petitioners.
James G. Colvin, II, City Atty., Jackson L. Smith, Asst. City Atty., Robert Mack, Asst. City Atty., Colorado Springs, for respondents.
ROVIRA, Justice.
Petitioners, Marvin and Marie Sherman, seek review of the court of appeals' decision in Sherman v. Colorado Springs Planning Comm'n, 729 P.2d 1014 (Colo. App.1986), which held that they could not recover monetary damages for the wrongful denial of their development plan by the Planning Commission and City Council of Colorado Springs (City). We granted certiorari in order to determine (1) whether the Shermans' action was in the nature of mandamus, entitling them to monetary damages, or in the nature of certiorari, entitling them simply to a determination that the denial of their development plan was invalid; and (2) if monetary damages were appropriate, whether the doctrine of sovereign immunity was available to the City as a defense. We affirm.

I.
The Shermans own approximately 5 acres of land in Colorado Springs. In 1963, this property was zoned R5-HR, a multi-family zoning with a highrise overlay. The Shermans began efforts to develop the land in 1979, but the denial of several variances impeded their progress.
In 1981, the Colorado Springs City Code (Code) required the submission and approval of a development plan before a landowner could develop his land. Section 14-3-127 (1980) of the Code provided:
Prior to the issuance of a building permit for a highrise structure within the highrise zone, an approved development plan must be on file with the city planning department. Development plans must meet the requirements of article 5 of this ordinance. Development plans may be approved by the city planning department unless otherwise stated in a motion by the city planning commission or city council.
Article 5 of the Code contained a detailed set of requirements for the development plan, but established no criteria for reviewing these plans. Section 14-5-103 of the Code stated "the procedure for review of development plans is specified in each zone, and shall be further detailed by planning department policy as needed." The highrise zone did not contain any procedures for review of development plans.
*294 The Shermans submitted a development plan in 1981. It is undisputed that the plan met all of the zoning requirements for the multi-family highrise overlay zone, and contained all of the information which was required for submission of the development plan. The plan was referred to the city planning commission which, after notice and posting, conducted a public hearing. The commission denied approval of the plan.
The Shermans appealed to the city council. The council recognized that the highrise zone lacked sufficient standards for reviewing the development plan. The council therefore turned to the intent and purpose section of the zoning code, § 14-1-102 (1980), and reviewed the Shermans' development plan against these standards.[1] The council rejected the development plan because of the proposed density. It found that such high density would adversely impact the health, safety, and welfare of the neighborhood, increase traffic congestion, and was not reasonably compatible with the community.
The Shermans filed an action in district court pursuant to C.R.C.P. 106(a)(2) (mandamus) to compel the City's approval of the plan or, in the alternative, under C.R.C.P. 106(a)(4) (certiorari) to reverse the City's rejection of the plan as arbitrary and capricious. The district court denied relief, finding that mandamus was not appropriate because the City was vested with discretion to approve or reject development plans under the Code, and that the City's actions should be upheld on certiorari review because they were not arbitrary or capricious.
On appeal, the court of appeals reversed. The court first considered this action under C.R.C.P. 106(a)(4). It recognized that "[a] challenge relative to the application of a statute or ordinance addresses the application of a general rule or policy to specific individuals, interests, or situations, and is generally a quasi-judicial action subject to review as authorized under C.R.C.P. 106(a)(4)." Sherman v. Colorado Springs Planning Comm'n, 680 P.2d 1302, 1304 (Colo.App.1983) (Sherman I). The court determined, however, that the City had limited its own discretion by "establish[ing] a zone wherein the use to which the Shermans proposed to put their land is a use permitted by right and not a conditional use." Sherman I, 680 P.2d at 1304. It then held that the development plan ordinance could not be used to reject the Shermans' plan because the ordinance lacked adequate standards. The City's rejection of the development plan was therefore invalidated, as the City had "exercised discretion not afforded to it in its zoning ordinances," and, in doing so, had "exceeded its jurisdiction." Sherman I, 680 P.2d at 1304.
The court of appeals also held that mandamus relief should have been granted pursuant to C.R.C.P. 106(a)(2). Because the Shermans' development plan complied with all of the requirements of the zoning ordinance, and all procedures for plan approval had been completed, the court held that approval was not a matter within the council's discretion. It then remanded the cause with directions to enter an order directing the council to approve the Shermans' plan.
Following remand, the Shermans moved to set the matter for a hearing on damages pursuant to C.R.C.P. 106(a)(2), on the *295 ground that the court of appeals had granted relief in the nature of mandamus. The trial court granted summary judgment on behalf of the City, ruling that the state and its entities are not liable for damages in effectuating their zoning authority. The court also held that the doctrine of sovereign immunity provided a defense to the Shermans' claim for damages.
The Shermans again appealed, arguing that their suit was essentially in the nature of mandamus and that C.R.C.P. 106(a)(2) required entry of a judgment awarding them damages. The court of appeals, Judge Pierce dissenting, affirmed the ruling of the trial court. Sherman v. Colorado Springs Planning Comm'n, 729 P.2d 1014 (Colo.App.1986) (Sherman II). The court held that the doctrine of sovereign immunity was available to the City of Colorado Springs, thus protecting the City from the Shermans' claim for damages, as the action was one "for injury which lies in tort or could lie in tort." § 24-10-108, 10 C.R. S. (1987 Cum.Supp.). It further found that the ordinance which purportedly gave authority to the City to deny the plan was "a pure exercise of the city's police power." Sherman II, 729 P.2d at 1015. The court held that the only remedy available to the Shermans was invalidation of the regulation, not damages.

II.
We believe that the Shermans' action could only be brought under the provision for certiorari review, C.R.C.P. 106(a)(4), and therefore affirm the dismissal of their claim for damages.
Mandamus is an extraordinary remedy which may be used to compel performance by public officials of a plain legal duty devolving upon them by virtue of their office or which the law enjoins as a duty resulting from the office. Potter v. Anderson, 155 Colo. 25, 392 P.2d 650 (1964). Although mandamus is classed as a legal remedy, it is an extraordinary remedial process which is awarded not as a matter of legal right, but in the exercise of sound judicial discretion. People v. Buckland, 84 Colo. 240, 269 P. 15 (1928).
In Gramiger v. Crowley, 660 P.2d 1279 (Colo.1983), we established a three-part test which must be satisfied before the court will issue mandamus: (1) The plaintiff must have a clear right to the relief sought; (2) the defendant must have a clear duty to perform the act requested; and (3) there must be no other available remedy. We believe that the Shermans have satisfied the first two elements of this test.
Our focus in this case, however, is directed to the third element of the Gramiger test. This court has consistently held that mandamus is available only when no other adequate remedy is available. See Peoples Natural Gas Div. of Northern Natural Gas Co. v. Public Utilities Comm'n, 626 P.2d 159 (Colo.1981); Julesberg School Dist. RE-1 v. Ebke, 193 Colo. 40, 562 P.2d 419 (1977); Potter v. Anderson, 155 Colo. 25, 392 P.2d 650 (1964); Hall v. Denver, 117 Colo. 508, 190 P.2d 122 (1948). Therefore, if certiorari review under C.R.C.P. 106(a)(4) is available, a mandamus action would not be appropriate. Potter, 155 Colo. 25, 392 P.2d 650; Hall, 117 Colo. 508, 190 P.2d 122.
Certiorari review, at the time this case arose, was available pursuant to C.R.C.P. 106(a)(4):
Where an inferior tribunal (whether court, board, commission or officer) exercising judicial or quasi-judicial functions, has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy.... Review shall not be extended further than to determine whether the inferior tribunal has exceeded its jurisdiction or abused its discretion.
The Shermans argue that certiorari review is inappropriate because the City was performing a ministerial function, rather than a quasi-judicial function, in reviewing the development plan. They argue that because there was no discretion afforded to the city council or planning commission under the applicable regulatory scheme, the action by those entities was purely administrative in nature. We disagree.
In determining whether the City was performing a quasi-judicial or ministerial *296 function, our inquiry must focus on the nature of the governmental decision and the process by which that decision was reached. Cherry Hills Resort Dev. Co. v. Cherry Hills Village, 757 P.2d 622 (Colo. 1988). Where a governmental decision is likely to affect the rights and duties of specific individuals, and the decision is to be reached through the application of preexisting legal standards or policy considerations to present or past facts developed at a hearing, the governmental body is generally acting in a quasi-judicial capacity. Id.
Here, the decision by the City specifically affected the Shermans' rights and duties. In addition, the City's regulatory scheme required the planning commission and city council to review an individual development plan against the City's zoning ordinances. See Colorado Springs, Co., City Code §§ 14-3-127, 14-5-103, 14-1-107 (1980).
Moreover, the existence of a statute or ordinance mandating notice and a public hearing prior to a determination by a governmental entity is "compelling proof that any decision under that legislative scheme is intended to be quasi-judicial in character and thus subject to judicial review under C.R.C.P. 106(a)(4)." Cherry Hills Resort Dev. Co., 757 P.2d at 626.
Here, the City was required to give notice by publication and posting for the hearings before the planning commission and the city council. Colorado Springs, Co., City Code § 14-17-111 (1980). The City was also required to conduct a public hearing, pursuant to notice, at which time concerned citizens were permitted to present evidence. Code § 14-17-113 (1980). We believe that the City, in determining whether the local ordinances had been met in connection with the Shermans' development plan, was acting in an adjudicative capacity. See Dillon Co. v. Boulder, 183 Colo. 117, 515 P.2d 627 (1973).
In determining whether the City was performing a quasi-judicial or a ministerial function, we must also consider whether its actions involved an exercise of discretion. Englewood v. Daily, 158 Colo. 356, 407 P.2d 325 (1965). We therefore turn to the Colorado Springs regulatory scheme to determine whether the City was vested with discretion in reviewing development plans.
The Colorado Springs requirement that a development plan be submitted is part of a modern trend in municipal planning. Municipalities, in an effort to circumvent the rigidity of traditional zoning, have adopted a variety of planned development schemes which include cluster developments, floating zones, planned unit developments, and planned development districts. See 2 R. Anderson, American Law of Zoning § 11.01 (3d ed. 1986). Such devices are designed to attain the flexibility necessary to permit adjustment to changing needs, and the ability to provide for more compatible and effective development patterns within a city. See Tri-State Generation & Transmission Co. v. Thornton, 647 P.2d 670 (Colo.1982). Because planned development ordinances vest broad discretion in a planning commission or city council, we have required that the ordinance contain sufficient standards against which the zoning authority's action may be measured. Id. Where an ordinance vests unreviewable discretion in a zoning authority, the ordinance is void for vagueness. South of Second Ass'n v. Georgetown, 196 Colo. 89, 580 P.2d 807 (1978).
Because the Colorado Springs Development Plan Ordinance did not contain sufficient standards by which to review a development plan, the planning commission and city council were limited to a determination of whether the Shermans' plan met the traditional zoning requirements. However, regardless of the eventual invalidation of the ordinance, the City was carrying out a discretionary function under the planned development scheme. The denial of the Shermans' plan was not invalidated because the City lacked discretion, rather, the City's action was invalid because the ordinance did not guide its discretion. Because the City was required to exercise discretion under its Code, we conclude that it was not simply performing a ministerial function. Therefore, the Shermans were entitled to relief pursuant to C.R.C.P. 106(a)(4).
In support of this conclusion, we note that in several cases where an applicant *297 met all of the legal requirements of the zoning ordinances but was refused approval on the basis of extraneous considerations, certiorari review was permitted. In Bauer v. Wheatridge, 182 Colo. 324, 513 P.2d 203 (1973), the applicant for a special exception permit complied with all of the mandatory requirements of a flood plain ordinance. The city council denied the permit because it objected to the type of building that was to be placed on the property. This court agreed that the city council was acting in a quasi-judicial capacity, and the denial of the permit constituted an abuse of discretion under C.R.C.P. 106(a)(4).
In Western Paving Construction Co. v. Board of County Commissioners, 181 Colo. 77, 506 P.2d 1230 (1973), we considered a zoning resolution which allowed the grant of a special use permit:
[P]rovided the location of each use is first reviewed ... as to environmental influences related to the intent and purpose of this Resolution, and subject to such conditions and safeguards as may be imposed by the Board of County Commissioners in order for the uses to be in harmony with the character of the surrounding neighborhood, to comply with the general purpose of this Resolution, and otherwise to promote the health, safety and welfare of Boulder County....
Although the applicant met all of the requirements imposed by the ordinance, the Board denied the special use permit on the basis that the use "would not be consistent, or in harmony with the character of surrounding neighborhood...." Western Paving at 81, 506 P.2d at 1232. We held that, because the resolution did not contain adequate standards, it could not be used as grounds for denial of a lawful use. Therefore, we invalidated the denial of the permit on the grounds that the zoning board acted in an arbitrary and capricious manner. See also Vick v. Board of County Commissioners of Larimer County, 689 P.2d 699 (Colo.App.1984); Best v. La Plata Planning Comm'n, 701 P.2d 91 (Colo.App. 1984).
This court has also held that where a development plan is denied on the basis of an ordinance which does not provide adequate standards, the zoning authority has exceeded its jurisdiction. Beaver Meadows v. Board of County Commissioners, 709 P.2d 928 (Colo.1985). See also Wood Bros. Homes v. Colorado Springs, 193 Colo. 543, 568 P.2d 487 (1977).
The Shermans' reliance on Colorado Springs v. Street, 81 Colo. 181, 254 P. 440 (1927), is misplaced. In that case, the zoning ordinances did not set up a scheme in which the city council was permitted to exercise discretion. Here, by contrast, the Colorado Springs City Code authorized the zoning authority to exercise too much discretion.
Since certiorari review was available to the Shermans pursuant to C.R.C.P. 106(a)(4), we conclude that relief in the nature of mandamus was not appropriate. Because certiorari review does not include a damages remedy, we need not reach the question of whether the doctrine of sovereign immunity would apply.
The judgment of the court of appeals is affirmed.
ERICKSON, J., dissents.
KIRSHBAUM and VOLLACK, JJ., join in the dissent.
ERICKSON, Justice, dissenting:
I dissent because in my view the city council's action in denying the Shermans' development plan was the exercise of a "non-discretionary ministerial function." In the first of two appeals heard regarding this case, the court of appeals found that Colorado Springs has by ordinance
established a zone wherein the use to which the Shermans proposed to put their land is a use permitted by right and not a conditional use.... Thus, if a plan submitted complies with all the requirements of the ordinance, and all the procedures for plan approval have been completed by the applicant, approval is not a matter which lies within the discretion of the approving body.
Sherman v. Colorado Springs Planning Comm'n, 680 P.2d at 1304 (Colo.App.1983) (Pierce, J., dissenting) (citing Winters v. *298 Commerce City, 648 P.2d 175 (Colo.App. 1982); 3 A. Rathkopf, Law of Zoning and Planning § 44.05[1]). I agree with this interpretation.
The appropriate vehicle to compel the city council to perform their duty to approve the plan is a C.R.C.P. 106(a)(2) motion for a writ of mandamus. Mandamus is the proper remedy:
Where the relief sought is to compel an inferior tribunal, corporation, board, officer or person to perform an act which the law specially enjoins as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board, officer, or person. The judgment shall include any damages sustained.
Because the city council had no discretion to deny the Shermans' application, the majority's conclusion that certiorari review was proper is erroneous. Certiorari review is only available "[w]here an inferior tribunal... exercising judicial or quasi-judicial functions, has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy...." C.R.C. P. 106(a)(4).
The court of appeals found that the city council had abused its discretion because the council had exercised jurisdiction where it had none. The council's jurisdiction stems from the Colorado Springs City Code which provides, in section 14-3-127 (1980),[1] that development plans may be approved or rejected depending upon their compliance with the requirements of the city code. Therefore, the council has jurisdiction to reject a non-conforming plan or approve one that conforms. The problem here is not that the council had no jurisdiction to review the Shermans' plan to ensure that it conformed to the zoning requirements, but that, in exercising its jurisdiction, the council erred when it denied the Shermans' application. Thus, lack of jurisdiction was not a proper basis for finding, as the court of appeals did, that the city council had abused its discretion.
Since the case is in the nature of mandamus and not certiorari, the shield of sovereign immunity is not available. The sovereign immunity act relied upon by the majority covers actions which "lie or could lie in tort" and is available as a defense in an action for injury. See § 24-10-105, 10 C.R. S. (1982). A mandamus action is not an action for injury and consequently cannot lie in tort. See Jones v. Northeast Durango Water Dist., 622 P.2d 92 (Colo.App. 1980). Thus sovereign immunity does not prevent the Shermans from bringing this mandamus action against the city council.
In my view, Judge Pierce properly analyzed the issues in his dissent. See Sherman v. Colorado Springs Planning Comm'n, 680 P.2d at 1304 (Colo.App.1983) (Pierce, J., dissenting).
I am authorized to say that Justice KIRSHBAUM and Justice VOLLACK join in this dissent.
NOTES
[1] Section 14-1-102: Intent and Purpose: This chapter is designed to encourage the most appropriate use of land throughout the City to insure a logical growth of the various physical elements of the City; to lessen congestion in the streets, and to facilitate the adequate provision of transportation; to secure safety from fire, panic, and other dangers; to provide adequate light and air; to improve housing standards; to conserve property values; to facilitate adequate provisions for water, sewage, schools, parks and other public requirements; to protect against flood conditions and poor geologic conditions and in general to promote health, safety and general welfare. The regulations within this Chapter shall be made with reasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses and with a view to encourage the most appropriate use of land throughout the City.

It is the intent and purpose of the Zoning ordinance to protect property values, to preserve neighborhoods and to protect private property from adjacent nuisances such as noise and excessive traffic....
[1] This provision of the Colorado Springs City Code has since been amended as section 14-3-2706. The substantive provisions of sections 14-3-127 and 14-3-2706 are substantially identical.