**Marvin SHERMAN and Marie Sherman,**
**Petitioners-Appellants,**

v.

**The CITY OF COLORADO SPRINGS PLANNING COMMISSION and the City Council of the City of Colorado Springs, Respondents-Appellees.**

No. 82CA0759.

Colorado Court of Appeals,
Div. II.

Nov. 17, 1983.

Rehearing Denied Dec. 22, 1983.

Certiorari Denied May 21, 1984.

Hayden W. Kane, Mark H. Kane, Colorado Springs, for petitioners-appellants.

James G. Colvin, II, City Atty., Jackson L. Smith, Asst. City Atty., Colorado Springs, for respondents-appellees.

TURSI, Judge.

Plaintiffs, land developers Marvin and Marie Sherman, appeal the district court's order denying them relief from the rejection of their condominium development plan by the City Council of Colorado Springs (City). Approval of the development plan was a condition precedent to obtaining their desired building permit. Because we agree with the Shermans' contentions that the City's zoning ordinances were unconstitutionally applied and that mandamus relief is available to compel approval of their development plan, we reverse.

The Shermans have owned a 5.05 acre tract on the west side of Colorado Springs since 1955. The property was zoned for high-rise residential development in 1963. The Shermans' efforts to develop the property began in 1979, when they submitted a development plan and a request for a bulk variance. The bulk variance was denied, and the Shermans did not appeal.

In January 1981, the City adopted an ordinance requiring approval of a "development plan" by the City Planning Director, the Planning Commission, or the City Council prior to issuance of building permits in most zones, including the zone permitting multi-family high-rise. The ordinance defines a development plan as:

"a graphic representation of a particular proposed development that once approved shall be binding on the property until officially amended." Colorado Springs City Code 14–5–101.

The ordinance further outlined the minimum information to be contained in all plans submitted. Colorado Springs City Code 14–5–102. The procedure for plan review was to be specified in each zone. Colorado Springs City Code 14–5–103. The multi-family high-rise zone provisions read:

"[D]evelopment plans must meet the requirements of [Colorado Springs City Code 14–5–101, et seq.]. Development plans may be approved by the City Planning Department unless otherwise stated in a motion by the City Planning Commission or City Council." Colorado Springs City Code 14–3–2706(B).

Other than requiring that the plan meet the requirements of the code, the city ordinances, at the time the application was made, contained no criteria or general standards for approval or rejection of submitted plans.

The Shermans submitted a development plan for a 14-story building to the Planning Department in August 1981. After public hearings the Department rejected the plan. Thereafter, the Shermans appealed the Department's action to the City, and public hearings were held. The City cited incompatibility of a high-rise building to the surrounding neighborhood and the increased traffic caused by high-density development as grounds for rejecting the Shermans' plan.

The Shermans filed an action in district court pursuant to C.R.C.P. 106(a)(2) to compel City's approval of the plan (relief in the nature of mandamus) or, in the alternative, under C.R.C.P. 106(a)(4) to reverse the City's rejection of the plan as arbitrary (relief in the nature of certiorari). Both parties stipulated that the proposed development plan is in complete compliance with the applicable requirements in the ordinances governing the multi-family high-rise zoning districts. They further stipulated that the WestSide Plan, a master plan adopted by the city in 1980, which recommended no high-rise development in the neighborhood where the Shermans' property is located, was not applicable in the instant controversy.

The district court ruled that mandamus was not appropriate because City was vested with discretion to approve or reject development plans under Colorado Springs City Code 14–5–101, et seq., and it denied certiorari upon finding that, based upon the record, the City action was not arbitrary or capricious. The Shermans contend that the district court erred in both its rulings.

## I

A challenge relative to the application of a statute or ordinance addresses the application of a general rule or policy to specific individuals, interests, or situations, and is generally a quasi-judicial action subject to review as authorized under C.R.C.P. 106(a)(4). *Snyder v. City of Lakewood,* 189 Colo. 421, 542 P.2d 371 (1975). Thus, the issue presented by the certiorari action is whether it appears from the record that the council abused its discretion or exceeded its jurisdiction in relying on the development plan ordinance to reject a plan which complied with the existing zoning guidelines for residential high-rise development.

In a home rule city, the authority of the zoning body is limited by *Colo. Const.* Art. XX, Sec. 6, by the city's charter, and by duly enacted ordinances. *City of Colorado Springs v. Smartt,* 620 P.2d 1060 (Colo.1980); *City of Fort Collins v. Dooney,* 178 Colo. 25, 496 P.2d 316 (1972).

The development plan or site planning concept is one of a variety of land use tools devised in an attempt to provide greater flexibility in land use regulation. In contrast to traditional zoning, in which decisions on permitted uses are made in advance, development or site planning decisions are made on a case-by-case basis through application of general standards. Thus, flexibility and discretion are exercised as necessary in light of a particular project, the land on which it will be built, and the surrounding neighborhood. A municipality may gain such flexibility in the exercise of its discretion by the enactment of a Planned Unit Development ordinance, as the city did here by its adoption of Colorado Springs City Code 14–3–101, et

seq. *See Tri-State Generation & Transmission Co. v. Thornton,* 647 P.2d 670 (Colo.1982); *Moore v. Boulder,* 29 Colo. App. 248, 484 P.2d 134 (1971).

Here, however, the city has by legislative fiat established a zone wherein the use to which the Shermans proposed to put their land is a use permitted by right and not a conditional use. Where, as here, the zoning body has determined that the health, safety, and general welfare are best promoted by zoning land for residential high-rise purposes with specified set back, height, and bulk limitations, that body may not thereafter attempt to reserve to itself the discretion to decide which of the complying land uses will be permitted. *Kozesnik v. Montgomery Township,* 24 N.J. 154, 131 A.2d 1 (1957). To interpret this development plan ordinance as giving the city the power to deny a lawful use of property runs contrary to the requirement of adequate standards. *Tri-State Generation & Transmission Co. v. Thornton, supra.*

Inasmuch as the city council exercised discretion not afforded to it in its zoning ordinances, it has exceeded its jurisdiction, and its rejection of the plaintiffs' development plan is invalid. *See South of Second Assoc. v. Georgetown,* 196 Colo. 89, 580 P.2d 807 (1978).

## II

The Shermans also contend that the district court erred in denying mandamus relief to compel approval of their plan, and we agree.

Mandamus is appropriate to compel performance of a non-discretionary ministerial function. C.R.C.P. 106(a)(2); *Menchetti v. Wilson,* 43 Colo.App. 19, 597 P.2d 1054 (1979). Thus, if a plan submitted complies with all the requirements of the ordinance, and all the procedures for plan approval have been completed by the applicant, approval is not a matter which lies in the discretion of the approving body. *Winters v. Commerce City,* 648 P.2d 175 (Colo. App.1982); *see 3 A. Rathkopf, Law of Zon-*

*ing & Planning* § 44.05[1]. By stipulation, such is the case here, and thus, mandamus relief should have been granted.

The district court's order is reversed, and the cause is remanded for entry of an order directing the council to approve the plaintiffs' plan.

PIERCE and SMITH, JJ., concur.