**Frank GLATZ, Plaintiff-Appellee,**

v.

**The CITY AND COUNTY OF DENVER, Colorado; Board of Adjustment of the City and County of Denver, Colorado; Board of County Commissioners of the City and County of Denver, Colorado, Defendants-Appellees,**

and

**Nick Rondinelli; Gilbert Arb; Elmer Jaramillo; Bonnie Quintana; Anthony Castro; Daisey Castro; Bonnie Veltrie; Mark Upshaw; and College View Civil Association, Intervenors-Appellants.**

No. 85CA0506.

Colorado Court of Appeals,
Div. I.

Dec. 4, 1986.

Rehearings Denied Dec. 31, 1986.

Certiorari Denied (Glatz) April 13, 1987.

Lobus & Bradley, P.C., Jon T. Bradley, Lakewood, for plaintiff-appellee.

Stephen H. Kaplan, City Atty., Robert M. Kelly, Asst. City Atty., Denver, for defendants-appellees.

Goldstein & Armour, P.C., Gilbert Goldstein, Darrel L. Campbell, Denver, for intervenors-appellants.

CRISWELL, Judge.

Intervenors, who live near land owned by plaintiff, Frank Glatz (Glatz), appeal the trial court's judgment which reversed a zoning decision of the Denver Board of Adjustment (Board). They assert that the trial court erred in concluding that the Board's pertinent findings were without evidentiary support. We agree and reverse the judgment.

The subject of the Board's proceedings was Glatz's parcel of realty, which is located at the southwest corner of the intersection of South Raritan Street and West Pacific Place in Denver. This land was initially zoned R-1, which zoning classification permits only single family residences required to be set back 20 feet from the property line.

In December 1982, the Denver City Council, after a public hearing, adopted an ordinance rezoning the Glatz land to a B-4 status, which classification permits a wide variety of commercial uses. In order to protect the remaining residences in the neighborhood, this ordinance made the Glatz rezoning subject to several conditions, one of which was that the owner, his successors, and assigns would:

"waive the right to develop the property within a buffer area of 20 feet all along West Pacific Place with the exception of curb cuts."

The next spring, Glatz applied for a building permit to allow erection of a warehouse with a solid exterior wall to be located only 8 feet from the property line which abutted West Pacific Place. Initially, the Denver Department of Zoning Administration (Zoning), which enforces Denver's zoning ordinance, was prepared to deny the permit, based upon the language of the rezoning ordinance. However, it later issued the permit when informed by the Denver Planning Department (Planning), the department which makes recommendations to City Council upon rezoning requests, that Planning had agreed with Glatz, during the course of the rezoning process, to measure the 20-foot "buffer area" from the curb line of West Pacific Place, rather than from the property line.

Upon learning of the permit's issuance, one of the intervenors appealed to the Board pursuant to provisions of the Denver Zoning Ordinance. After a full hearing, the Board concluded that:

"when the City Council approved rezoning the legislative intent was that the setback on West Pacific Place should be 20' from the property line."

Therefore, it "overruled" Zoning's issuance of the permit to Glatz.

■ After a review of the administrative record pursuant to Glatz's C.R.C.P. 106(a)(4) complaint, the trial court concluded, *inter alia*, that the foregoing finding was "totally unsupported by the evidence," and reversed the Board's decision. Our review of the same record convinces us, however, that the Board's finding has ample evidentiary support. And, since a Board decision can be set aside only if the administrative record contains no competent evidence to support that decision, *Denver Police Protective Ass'n. v. City and County of Denver*, 710 P.2d 3 (Colo.App. 1985), the trial court's judgment must be reversed.

Here, the sole issue before the Board was the proper interpretation of the pertinent provision of the rezoning ordinance. If the 20-foot buffer area referred to in the ordinance was intended to be measured from the parcel's property line, the building permit had been issued in error; if the

buffer area was intended to be measured from the curb line of West Pacific Place, its issuance was proper.

■ The same considerations which apply to the interpretation of a state statute apply to the interpretation of a local zoning ordinance. *See* 3 R. Anderson, *American Law of Zoning* § 18.07 (3rd ed. 1986); *Rancho Colorado, Inc. v. City of Broomfield*, 196 Colo. 444, 586 P.2d 659 (1978). In either case, the legislative intent inherent in the measure is the "polestar" of its construction, *Beth Israel Hospital & Geriatric Center v. District Court*, 683 P.2d 343 (Colo.1984), and, if the legislation may bear varying interpretations, it must be construed in light of that legislative intent and purpose. *Engelbrecht v. Hartford Accident & Indemnity Co.*, 680 P.2d 231 (Colo.1984). *See* § 2–4–203, C.R.S. (1980 Repl.Vol. 1B).

In this case, evidence before the Board from a Zoning representative was that any buffer area required by a rezoning ordinance was generally measured from the property line, rather than from the curb line. The Glatz property was the only instance known to Zoning where Planning had measured such an area from the curb line.

In addition, the neighbors testified that Glatz represented to them, prior to the rezoning, that the building which was to be constructed was to be located so as to be "parallel" with an adjacent building. While the record contains no specific testimony as to this neighboring building's exact setback, photographs and site plans presented to the Board make it evident that it sits considerably farther than 8 feet back from the property line. Consistent with the neighbors' testimony, the Glatz representative who appeared before City Council at the public hearing on the rezoning ordinance represented to Council that the rezoning was needed so as to allow Glatz to erect a structure "consistent with" the building immediately adjacent to it. Likewise, Planning informed City Council at the rezoning hearing that the building Glatz intended to construct would be "similar" to the other building.

Furthermore, the taped record of the rezoning hearing, which was introduced at the later Board hearing, makes it evident that both Glatz's application and all of the other written and oral presentations made to council referred to a "buffer area," or a "setback," of 20 feet—words which, Zoning testified, have traditionally been construed to require measurement from the property line.

■ Thus, all of the evidence presented to City Council prior to or at the time of the ordinance's adoption would reasonably support the conclusion that Council intended the described buffer area to be measured from the property line.

The only conflicting evidence before the Board came from Glatz and a Planning representative. This evidence was that, in the discussions between them prior to City Council's public hearing, it was agreed that the buffer area was to be measured from the curb line. Yet, none of the contemporary correspondence between Glatz and Planning reflects this agreement. In any event, it is entirely undisputed that the City Council was not aware of this purported agreement before its adoption of the rezoning ordinance.

■ It is the intent of the local legislature as reflected in its public actions, and not the intent of non-elected administrative officials expressed under circumstances where neither the local legislators nor the public may be expected to become aware of such intent, which controls any question relating to the intent and meaning of local legislation. Hence, under the circumstances present here, it is impossible for evidence of the alleged agreement between Planning and Glatz to be reflective of *City Council's* intent in any way. *See Hurley v. Public Service Co.*, 123 N.H. 750, 465 A.2d 1217 (1983) (views of the draftsman are immaterial upon meaning of legislation, since there is no necessary correlation between his views and the intent of the legislators); *C–Y Development Co. v. City of Redlands*, 137 Cal.App.3d 926, 187 Cal. Rptr. 370 (1982) (recognizing, in dictum, that the draftsman's views might be con-

sidered, if those views were communicated to the legislators prior to enactment of the ordinance); 2A N. Singer, *Sutherland Statutory Construction* § 48.12 (4th ed. 1984 Rev.).

The judgment of the trial court is reversed and the cause is remanded with directions to enter a judgment upholding the Board's decision.

PIERCE and TURSI, JJ., concur.