**CITY OF COLORADO SPRINGS, a Colorado municipal corporation; the City of Colorado Springs Planning Commission; and the City Council of the City of Colorado Springs, Petitioners,**

v.

**SECURCARE SELF STORAGE, INC., a Colorado corporation, and Amoco Oil Company, a Maryland corporation, Respondents.**

No. 99SC200.

Supreme Court of Colorado,
En Banc.

Sept. 18, 2000.

Rehearing Denied Oct. 23, 2000.*

---

* Justice KOULIS and Justice COATS would grant  the petition.

Patricia K. Kelly, City Attorney, Stephen K. Hook, Assistant City Attorney, Colorado Springs, Colorado, Attorneys for Petitioners.

Deutsch, Spillane & Reutzel, P.C., John M. Spillane, David Wm. Foster, Denver, Colorado, Attorneys for Respondents.

Justice MARTINEZ delivered the Opinion of the Court.

In this zoning case, the petitioners seek review of a court of appeals' judgment upholding a district court's ruling that the City of Colorado Springs' zoning authorities may not deny a permitted use.[1] We do not agree with the court of appeals. We hold that the plain language of the City of Colorado Springs' Zoning Code allows the zoning authorities to review and deny a permitted use as that term is defined and treated in Colorado Springs' Zoning Code. Accordingly, we reverse and remand with instructions.

## I.

SecurCare Self Storage, Inc. (SecurCare) owns approximately 4.4 acres of land (the plot) in Colorado Springs. In 1995, Secur-Care sought to develop the entire plot by constructing mini-warehouses for self-storage. That year, SecurCare received administrative approval for its initial development plan, outlining SecurCare's intention to place mini-warehouses on its plot.

Shortly thereafter, SecurCare modified its development plan in light of an agreement it had with Amoco Oil Company (Amoco)[2] to build a service station on approximately one acre of the plot, with the remaining 3.4 acres dedicated to the initial proposed use of mini-warehouses. The service station complex

---

1. We granted certiorari on the following issue:

   Whether the court of appeals erroneously held that development plan review criteria cannot be used to deny a permitted use when that use is expressly subject to development plan ap-

proval pursuant to the terms of the City's Zoning Code.

2. SecurCare and Amoco are co-respondents in this case. For purposes of brevity, we will refer to both parties as SecurCare in this opinion.

was to include a gas station, a convenience store, and an enclosed car wash.

Unlike the first development plan, this amended plan was submitted to the City of Colorado Springs Planning Commission (the Planning Commission) for its approval. At a public hearing before the Planning Commission on the amended development plan, several members of the surrounding community voiced their concerns about constructing a service station on the plot. After hearing arguments in favor of and against the service station, the Planning Commission refused to approve the amended development plan, ruling that the service station was "incompatible" with the surrounding residential neighborhood.

The Planning Commission reached this conclusion despite the fact that Colorado Springs zoned the plot as a Planned Business Center (PBC) in 1972. The Zoning Code of the City of Colorado Springs (Zoning Code) explicitly designates mini-warehouses, service stations, convenience stores and enclosed car washes as permitted uses in a PBC zone. SecurCare appealed the Planning Commission's decision to the City Council of the City of Colorado Springs (the City Council). On appeal, SecurCare argued that the Planning Commission had no discretion to deny the proposed permitted uses and objected to the Planning Commission's conclusion that the uses were incompatible with the surrounding neighborhood. The City Council, however, upheld the Planning Commission's denial of the development plan.

SecurCare then filed a petition in district court under C.R.C.P. 106(a)(4), appealing the decisions by the Planning Commission and the City Council.[3] The sole argument made by SecurCare in support of its C.R.C.P. 106(a)(4) request to the district court was that a permitted use is by definition harmonious and compatible with the surrounding neighborhood. SecurCare did not challenge the standard itself as arbitrary and capricious, perhaps recognizing that we have previously approved criteria such as compatibili-

ty with the surrounding neighborhood. *See Board of County Comm'rs v. Conder*, 927 P.2d 1339, 1348 (Colo.1996) (citing cases). The district court ruled in favor of Secur-Care, holding that the actions of the Planning Commission and the City Council in denying permitted uses were "arbitrary and capricious and constitute[d] an illegal attempt to rezone the property" because a permitted use may not be denied. In the district court's view, Colorado Springs, by designating certain uses as permitted, already determined that such uses were harmonious and compatible with the surrounding neighborhood. Consequently, "the City may not attempt to reserve to itself the discretion to decide which of the complying land uses will be permitted." In a published opinion, the court of appeals affirmed the district court's decision. *See SecurCare Self Storage, Inc. v. City of Colorado Springs*, 987 P.2d 852, 853 (Colo.App.1998).

## II.

Our analysis in this case begins with a clarification of the central issue before us. We continue with a general overview of Colorado Springs' zoning power and Zoning Code. Our discussion concludes by addressing whether the court of appeals properly interpreted the Zoning Code provisions.

## A.

We begin our discussion by clarifying the nature of the issue before us. SecurCare initially brought suit in the district court under C.R.C.P. 106(a)(4), which provides that relief may obtained in district court

[w]here any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has *exceeded its jurisdiction or abused its discretion*, and there is no plain, speedy and adequate remedy otherwise provided by law.... [R]eview shall be limited to a determination of whether the body or officer has *exceeded its jurisdiction or abused its dis-*

---

**3.** In addition to the C.R.C.P. 106(a)(4) claim, SecurCare filed claims pursuant to C.R.C.P. 106(a)(2), 42 U.S.C. § 1983 (1995), and the takings and due process clauses of the state and

federal constitutions. These claims were bifurcated with their resolution pending the outcome of the C.R.C.P. 106(a)(4) claim. As such, these remaining claims are not on appeal before us.

*cretion,* based on the evidence in the record before the defendant body or officer. (Emphasis added.)

Under this Rule, our review of the issue before us is limited to determining whether the court of appeals properly upheld the district court's conclusion that the zoning authorities of Colorado Springs abused their discretion or exceeded their jurisdiction. Ultimately, the resolution of this issue turns on whether the Zoning Code grants the zoning authorities the power to deny the development plan of a permitted use. *See Sherman v. City of Colorado Springs Planning Comm'n,* 680 P.2d 1302, 1304 (Colo.App.1983) (holding that a local governmental body exceeds its jurisdiction under C.R.C.P. 106(a)(4) when it exercises discretion it does not have), *aff'd,* 763 P.2d 292, 294 (Colo.1988).

As such, our task in this case is to determine the extent of the authority that the Zoning Code provisions granted to the Colorado Springs' zoning authorities. Our analysis does not address, and the parties did not raise, issues regarding the constitutionality or wisdom of the Zoning Code provisions. *But see Zavala v. City & County of Denver,* 759 P.2d 664, 665–66 (Colo.1988) (reviewing a party's challenge to Denver's zoning code on due process and equal protection grounds). Additionally, the parties have not argued that the findings of the Planning Commission were insufficient or that the record failed to support the findings. Mindful of the task before us, we continue with a brief overview of the Zoning Code.

### B.

■ The Colorado Constitution explicitly grants Colorado Springs, a home-rule city, broad legislative authority to draft and implement its charter and ordinances regarding local and municipal matters. *See* Colo.

Const. art. XX, § 6. On several occasions, we have categorized zoning as a local and municipal matter for purposes of this constitutional section. *See, e.g., Voss v. Lundvall Bros.,* 830 P.2d 1061, 1064 (Colo.1992) (recognizing that the exercise of zoning authority within a home rule city's municipal borders is a matter of local concern); *City of Greeley v. Ells,* 186 Colo. 352, 358, 527 P.2d 538, 541 (1974) (same); *Roosevelt v. City of Englewood,* 176 Colo. 576, 586, 492 P.2d 65, 70 (1971) (same).

■ This legislative authority to adopt and implement zoning policies, in turn, is governed and limited by Colorado Springs' own charter and ordinances. *See Zavala,* 759 P.2d at 669; *City of Colorado Springs v. Smartt,* 620 P.2d 1060, 1062 (Colo.1980). As such, Colorado Springs may adopt and draft its Zoning Code as it chooses so long as it conforms with constitutional limitations and the city's own charter and ordinances. *See Zavala,* 759 P.2d at 670.[4]

The Charter of the City of Colorado Springs (the Charter) grants general powers to the City Council, including the power to legislate. Section 3–3–10(a) of the Charter provides, "All powers of the City shall be vested in the Council, except as otherwise provided by law or this Charter." Vested with these broad powers, the City Council drafted the Zoning Code.

The Zoning Code initially creates specific zone districts throughout Colorado Springs. *See* § 1–1–105(A), Zoning Code.[5] The Zoning Code then defines the uses allowed within each zone district, specifying whether the use is conditional or permitted. *See generally* Table 2.2.1, Zoning Code (listing the permitted, conditional, and accessory uses of the various zone districts). A permitted use is defined as "[a]ny use of land or a structure which is allowed by right in a zone district and *subject to the requirements of that dis-*

---

4. In contrast to this broad zoning power granted to home-rule cities, the zoning power of statutory cities is limited to the General Assembly's explicit delegation of such power. *See Glennon Heights, Inc. v. Central Bank & Trust,* 658 P.2d 872, 876–77 (Colo.1983); *see also Western Paving Constr. Co. v. Board of County Comm'rs,* 181 Colo. 77, 81, 506 P.2d 1230, 1231–32 (1973) (construing a state statute as outlining the limits of a county's authority to zone).

5. Colorado Springs has integrated the provisions of the Zoning Code as Chapter 14.1 within the Colorado Springs' City Code. For purposes of brevity and clarity, however, we cite to the Zoning Code as an independent body of law without reference to its citation within the city code.

*trict."* § 1–2–201, Zoning Code (emphasis added). The Zoning Code defines a conditional use as "[a] land use which is contemplated with the permitted uses in a zone district but has operating and/or physical characteristics which require careful consideration and public review of the impact upon the neighborhood and the public facilities surrounding the proposed location." *Id.*

The zone district at issue here is the PBC zone district, which allows for a variety of permitted and conditional uses. As its title indicates, the PBC zone district is designed to accommodate commercial uses that serve adjoining neighborhoods. *See* § 2–2–202(C), Zoning Code. Permitted uses within the PBC zone district include those uses proposed by SecurCare. *See* Table 2.2.1, Zoning Code (listing mini-warehouses, convenience stores, enclosed car washes, and service stations as permitted uses in a PBC zone district).

The Zoning Code also establishes certain requirements for developing land in any designated zone district, including the PBC zone district. For example, the construction of any building or structure requires a building permit. *See* § 4–4–402(A), Zoning Code. Moreover, the issuance of a building permit is explicitly conditioned on receiving the approval of a development plan explaining the proposed development. *See id.*

This development plan requirement is prevalent throughout the Zoning Code and specifically governs any development in a PBC zone district. *See* § 2–2–202(C)(2), Zoning Code. The provisions regulating building permits reiterate the development plan requirement for projects located in a PBC zone district. *See* § 4–4–402, Zoning Code; *see also* § 4–6–602(B), Zoning Code ("A development plan shall be approved before any building permits may be issued for property . . . which is located in the . . . PBC . . . zone district.").

The Zoning Code created the development plan requirement in recognition of the fact that "[a]ll combinations of permitted uses and development standards in a zoning district may not be appropriate at a particular location." § 4–6–602(A), Zoning Code. Hence, one key purpose of the development plan requirement is to "ensure . . . use com-patibility between the proposed land use and site design and the surrounding properties." *Id.*

When deciding whether to approve a development plan, a detailed list of review criteria, specifically designed for reviewing development plans, guides the decision. *See* § 4–6–602(C), Zoning Code. Some important considerations in the review criteria include whether the proposed project is harmonious with the surrounding land use and whether the proposed project complies with the requirements of the zone district. *See id.* As pertinent to this case, the review criteria require the Planning Commission to ask, "Will the proposed land uses be compatible with the surrounding neighborhood?" *Id.*

### C.

Examining the pertinent provisions of the Zoning Code, the court of appeals did not interpret section 4–6–602 "as a grant of authority allowing the Planning Commission to deny a permitted use on the ground that it is incompatible with the surrounding neighborhood." *SecurCare,* 987 P.2d at 854. In large part, we disagree with the court of appeals' interpretation of the Zoning Code because we conclude that it is inconsistent with the plain language of the Zoning Code provisions.

▮▮▮ Courts interpret the ordinances of local governments, including zoning ordinances, as they would any other form of legislation. *See Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village,* 790 P.2d 827, 830 (Colo.1990) (interpreting zoning ordinance under the general canons of statutory interpretation); *Ells,* 186 Colo. at 358, 527 P.2d at 541 (recognizing that the zoning code of a home-rule city is a legislative enactment); *Glatz v. City & County of Denver,* 735 P.2d 899, 901 (Colo.App.1986). As such, zoning ordinances are subject to the general canons of statutory interpretation.

▮▮▮ When construing a statute or ordinance, courts must ascertain and give effect to the intent of the legislative body. *See State v. Nieto,* 993 P.2d 493, 500 (Colo.2000); *Walker v. People,* 932 P.2d 303, 309 (Colo.

1997). Moreover, courts must refrain from rendering judgments that are inconsistent with that intent. *See Nieto,* 993 P.2d at 500. To determine legislative intent, we therefore look first to the plain language of the ordinance. *See id.* (citing *Vaughan v. McMinn,* 945 P.2d 404, 408 (Colo.1997)). If courts can give effect to the ordinary meaning of words used by the legislature, the ordinance should be construed as written, being mindful of the principle that courts presume that the legislative body meant what it clearly said. *See Askew v. Industrial Claim Appeals Office,* 927 P.2d 1333, 1337 (Colo.1996); *PDM Molding, Inc. v. Stanberg,* 898 P.2d 542, 545 (Colo. 1995); *see also* § 2–4–101, 1 C.R.S. (1999) ("Words and phrases shall be read in context and construed according to ... common usage."). Finally, if the statutory language is clear and unambiguous, the language should not be subjected to a strained or forced interpretation. *See Boulder County Bd. of Equalization v. M.D.C. Constr. Co.,* 830 P.2d 975, 980 (Colo.1992).

█ Applying these principles to this case, we conclude that the plain language of the Zoning Code provisions granted the Planning Commission the authority to deny a development plan for a permitted use by means of the development plan review criteria. Initially, we note that the plain language clearly establishes that a permitted use is not an absolute right under the Zoning Code. The plain language provides that all permitted uses are "subject to the requirements of" the various zone districts. § 1–2–201, Zoning Code. This language clearly demonstrates that the Zoning Code does not establish an absolute right to development that constitutes a permitted use,[6] but instead applies some limitations on permitted uses.

As previously noted, any development in any zone district is subject to the requirement of obtaining a building permit, which in turn requires approval of a development plan. *See* § 4–4–402(A), Zoning Code. The Zoning Code repeatedly makes clear that this requirement specifically applies to any development in a PBC zone district. Section 4–6–602(B)(1) of the Zoning Code simply states, "A development plan shall be approved before any building permits may be issued for property ... which is located in the ... PBC ... zone district." *See also* § 4–4–402, Zoning Code (same). Also referring to development in a PBC zone district, section 2–2–202(C)(2) of the Zoning Code provides, "Before building permits may be issued, a development plan which conforms to [s]ection 4–6–602 of this Zoning Code must be approved.... All development in a PBC shall be in conformance with the approved development plan." In establishing these requirements, this language makes no distinction between the types of uses, permitted or conditional, that are subject to the requirement of receiving approval of a development plan.

The Zoning Code provides that the Planning Commission has the authority to review development plans. However, the power to review a development plan for a permitted use is not exclusive of the Planning Commission. While the Planning Commission and the City Council must review a development plan for a conditional use or a change of zone application, a development plan for a permitted use "may be approved administratively or referred to the Planning Commission.... As an alternative to the administrative review process, the applicant or the Division may submit any plan to the Planning Commission" for review. § 4–6–603(A), Zoning Code.[7] The same rules apply to proposed

---

6. Other provisions of the Zoning Code offer further proof that it does not regard a permitted use as an absolute right. The PBC zone district lists a sexually oriented business as a permitted use. *See* Table 2.2.1, Zoning Code. However, the Zoning Code explicitly provides, "No sexually oriented business shall be located within one thousand feet (1,000') of another sexually oriented business, residentially zoned or used property, church, day care center, park or educational institution." § 4–14–1403(A), Zoning Code. Reading "permitted use" to signify an absolute

right would render this last provision meaningless. As an absolute right, landowners would be free to place a sexually oriented business in any lot zoned as a PBC regardless of the uses of the surrounding vicinity.

7. The term "Division" refers to the Development Services/Comprehensive Planning Division. *See* § 1–2–201, Zoning Code. Although the record in this case is unclear, the Division presumably referred SecurCare's amended development plan

amendments to a previously approved development plan. *See id.*

Significantly, the Zoning Code also provides that "[a] development plan *shall* be reviewed using" the development plan review criteria. § 4–6–602(C), Zoning Code (emphasis added). More importantly, "[n]o development plan shall be approved unless the plan ... is consistent with the intent and purpose of the Zoning Code and is compatible with the land uses surrounding the site." *Id.*

The plain language of this last sentence authorizes the Planning Commission to grant, or to deny, a development plan. The provisions also mandate that the Planning Commission review any development plan by using the development plan review criteria. Hence, the plain language of these provisions establishes the legislative intent to retain some discretion over permitted uses by means of the development plan review criteria. In our opinion, this intent is clearly expressed in the Zoning Code provisions.

The plain language of the Zoning Code provisions also puts to rest the court of appeals' concern that this interpretation is "inconsistent with the [Zoning] Code's intent to distinguish between permitted uses and conditional uses." *SecurCare*, 987 P.2d at 854. As Colorado Springs points out in its reply brief, a closer reading of the Zoning Code provisions discloses several key differences between conditional and permitted uses, which maintain a clear distinction between the two different types of uses.

In addition to satisfying the development plan review criteria, conditional uses are subject to several other requirements that do not apply to permitted uses. For example, while development plans for conditional uses are automatically reviewed by the Planning Commission and the City Council, those for permitted uses may be approved administratively or referred to the Planning Commission. *See* § 4–6–603(A), Zoning Code. Also, an approved development plan for a conditional use expires after one year if no building permit has issued. *See* § 4–8–806, Zoning Code. Development plans for all other uses, including permitted uses, expire after four years. *See* § 4–6–604(C)(2), Zoning Code. Importantly, these requirements are not reflected in the development plan review criteria. Hence, while it is true that the two types of uses are subject to the development plan review criteria, this similarity alone does not eliminate the distinction between the two types of uses.

In conclusion, we interpret the plain language of the Zoning Code as authorizing Colorado Springs' zoning authorities, including the Planning Commission, to review and deny the development plan of a permitted use. We find no language in the Zoning Code that exempts permitted uses from this requirement. Consequently, we disagree with the court of appeals' conclusion that the Planning Commission was not authorized to deny a permitted use by means of the review criteria, and, in doing so, abused its discretion or exceeded its jurisdiction. We hold that the Zoning Code can and does grant such authority to the Planning Commission.

### D.

In interpreting the Zoning Code provisions as not granting the Planning Commission the authority to deny the development plan of a permitted use, the court of appeals cited previous decisions from the court of appeals and this court to support its interpretation. In essence, the court of appeals construed these cases as restricting a city's authority to review and deny permitted uses, independent of whether the Zoning Code provisions actually granted such authority. Because the court of appeals relied on these cases, we discuss them to clarify their proper reading.

The court of appeals relied heavily on the previous court of appeals' decision in *Sherman v. City of Colorado Springs Planning Commission*, 680 P.2d 1302 (Colo.App.1983) (*Sherman I*). In *Sherman I*, the plaintiffs sought to build a fourteen-story residential building in an area zoned for high-rise residential development. *See id.* at 1303. At that time, Colorado Springs had recently adopted the zoning ordinance requiring approval of a development plan prior to the

to the Planning Commission pursuant to section   4–6–603(A) of the Zoning Code.

issuance of a building permit; however, Colorado Springs did not adopt any standards or criteria for reviewing development plans. *See id.* Pursuant to this ordinance, the plaintiffs submitted their development plan, and the Planning Commission refused to approve it. *See Sherman v. City of Colorado Springs Planning Comm'n,* 763 P.2d 292, 294 (Colo.1988) (*Sherman II*). Recognizing that there were no criteria or standards for reviewing development plans, the City Council nevertheless upheld the Planning Commission's decision, guided in large part by the intent and purpose section of the zoning code. *See id.* On review, the district court denied the plaintiffs' claims because the district court held that the zoning code gave the Planning Commission the discretion to approve or reject development plans. *See id.*

In reversing the district court, the *Sherman I* court stated, "Where, as here, the zoning body has determined that the health, safety and general welfare are best promoted by zoning land for [a specific purpose], that body may not thereafter attempt to reserve to itself the discretion to decide which of the complying land uses will be permitted." 680 P.2d at 1304. Interpreting this language, the court of appeals here held that "by allowing a use by right, the zoning body limits its discretion in denying that use." *SecurCare,* 987 P.2d at 854.

We find this interpretation of *Sherman I* faulty and inconsistent with the one we proffered in *Sherman II.* In *Sherman I,* the court of appeals concluded that the zoning authority exceeded its jurisdiction, "[i]nasmuch as the city council exercised *discretion not afforded to it in its zoning ordinances.*" *Sherman I,* 680 P.2d at 1304 (emphasis added). In *Sherman II,* we read the court of appeals' decision as holding that "the development plan ordinance could not be used to reject the Shermans' plan *because the ordinance lacked adequate standards.*" 763 P.2d at 294 (emphasis added). That is, we did not construe *Sherman I* as limiting a home rule city's power to review and deny a permitted

use. Instead, the proper reading of *Sherman I* is that a home rule city's zoning code cannot grant it the power to review and deny a permitted use unless the zoning code provides adequate review standards or criteria to do so. Without the proper standards or criteria, a court will not interpret the zoning provisions as granting such authority.

Contrary to the court of appeals' interpretation of the case, we do not construe *Sherman I* as limiting a home rule city's authority to draft its zoning ordinances. As explained earlier, a home rule city has the authority to draft its zoning ordinances as it chooses so long as they conform with the city's own charter and ordinances and constitutional limitations. By defining a permitted use, a home rule city does not necessarily deny itself the discretion to regulate the permitted use. In *Sherman I,* the court of appeals did not. conclude that a home rule city's zoning authority was limited by a constitutional provision or by the provisions of the city's charter or ordinances. Instead, the court of appeals simply interpreted the specific zoning code provisions before it and concluded that, as written, they did not grant such power to the zoning body.

In the case before us, SecurCare does not challenge the provisions of the Zoning Code as unconstitutional. Further, we find nothing in Colorado Springs' charter or ordinances that limits the zoning authorities' power to review and deny permitted uses. Absent such a limitation, Colorado Springs had the authority to adopt zoning provisions that subject permitted uses to review by the zoning authorities.

Critical to the ruling of the court of appeals in *Sherman I* was the absence of any standards or criteria for reviewing development plans. *See Sherman II,* 763 P.2d at 294 (interpreting *Sherman I*). Unlike the provisions at issue in *Sherman I,* Colorado Springs' current Zoning Code contains detailed, well-developed criteria to review development plans.[8]

---

**8.** Section 4–6–602(C) of the Zoning Code lists the development plan review criteria and provides: A development plan shall be reviewed using the criteria listed below. No development plan shall be approved unless the plan complies with all the requirements of the zone district in which it is located, is consistent with the intent and purpose of the Zoning Code and is compatible with the land uses surrounding the site.

The court of appeals also cited *Western Paving Construction Company v. Board of County Commissioners*, 181 Colo. 77, 506 P.2d 1230 (1973), to support the proposition that a permitted use may not be denied on the basis that the use is "incompatible" with the surrounding neighborhood. *See Secur-Care*, 987 P.2d at 854. We disagree with the court of appeals' reading of this case and find significant factors that distinguish *Western Paving* from the case before us.

In *Western Paving* we reviewed the county commissioners' decision to deny an application for a special use permit pursuant to the provisions of the county zoning code. *See* 181 Colo. at 79–80, 506 P.2d at 1231. As the property in *Western Paving* was zoned, sand and gravel operation constituted a permitted use, unless it was located in an area subject to flooding, in which case a special use permit was required. *See id.* at 79, 506 P.2d at 1231. Although the planning commission recommended granting the special use permit, the planning board refused to follow this recommendation. *See id.* The county commissioners upheld the decision of the planning board because the proposed use was not consistent or in harmony with the character

of the surrounding neighborhood. *See id.* at 79–80, 506 P.2d at 1231.

The county commissioners made this decision pursuant to the county zoning code, which regulated special use permits by subjecting them to "'such conditions and safeguards as may be imposed by the Board of County Commissioners in order for the uses to be in harmony with the character of the surrounding neighborhood.'" *Id.* at 80, 506 P.2d at 1231 (quoting the Boulder county zoning code). This provision of the zoning code was drafted pursuant to section 106–2–10, 10 C.R.S. (1967), which governed the zoning power of the counties of the state. *See Western Paving*, 181 Colo. at 80–81, 506 P.2d at 1231. The section provided that the county planning commission may regulate uses in areas subject to flooding "to the end that adequate safety may be secured." § 106–2–10.

We reversed the county commissioners' decision because we interpreted section 106–2–10 as not granting the county the power to deny this special use permit on the grounds listed in the county's zoning code. *See* 181 Colo. at 81, 506 P.2d at 1231. In doing so, we stated, "If the use is permitted within the

1. Will the project design be harmonious with surrounding land uses and neighborhood?
2. Will the proposed land uses be compatible with the surrounding neighborhood? Will the proposed development overburden the capacities of existing streets, utilities, parks, schools, and/or other public facilities?
3. Will the structures be located to minimize the impact of their use and bulk on adjacent properties?
4. Will landscaping, berms, fences and/or walls be provided to buffer the site from undesirable views, noise, lighting or other off-site negative influences and to buffer adjacent properties from negative influences that may be created by this proposal?
5. Will vehicular access from the project to streets outside the project be combined, limited, located, designed and controlled to channel traffic to and from such areas conveniently and safely in a manner which minimizes traffic friction, noise, and pollution and to promotes [sic] free traffic flow without excessive interruptions?
6. Will all streets and drives provide logical, safe and convenient vehicular access to all facilities within the project?

7. Will streets and drives within the project area be connected to streets outside the project area in such a way that discourages their use by through traffic?
8. Will adequately sized parking areas be located throughout the project to provide safe and convenient access to specific facilities?
9. Will safe and convenient provisions for the movement of handicapped persons and parking of vehicles for the handicapped be accommodated in the project design?
10. Will the design of streets, drives and parking areas within the project result in a minimum of area devoted to asphalt?
11. Will pedestrian walkways be functionally separated from vehicular traffic and landscaped to accomplish this? Will pedestrian walkways be designed and located in combination with other easements that are not used by motor vehicles?
12. Does the design encourage the preservation of significant natural features such as healthy vegetation, drainage channels, steep slopes and rock outcroppings? Are these significant natural features incorporated in the project design?

zone, then it is impossible to not be in harmony." *Id.* at 82, 506 P.2d at 1232.

Unlike the case before us, *Western Paving* involved a statute that delegated special authority to the counties to regulate uses in any storm or floodwater runoff channel to ensure adequate safety. *See id.* at 81, 506 P.2d at 1231–32. It was our view, however, that this statute did not grant the authority to deny a permitted use located in a storm or floodwater runoff channel on the grounds that the use was incompatible with the surrounding area. *See id.*, 506 P.2d at 1231. Instead, we interpreted the statute as granting the county commissioners the authority to regulate permitted uses "to tailor a proposed use to the conditions of the district so as to protect health, safety and welfare." *Id.*, 506 P.2d at 1231–32.

Here, the Zoning Code provisions clearly grant the Planning Commission the authority to deny a permitted use on the grounds that the use is incompatible with the surrounding area. As explained earlier, the Zoning Code provisions mandate that the Planning Commission review a permitted use to ensure that it is compatible with the surrounding area.

██ Moreover, a county's power to zone is delegated by the legislature. As such, this delegation of power represented the extent of the counties' zoning power. *See Ells,* 186 Colo. at 357–58, 527 P.2d at 541 (analyzing the same statute and recognizing that a county's zoning power is granted by the state legislature). In contrast, home rule cities have unique, constitutionally granted powers to zone. *See City of Greenwood Village v. Petitioners for the Proposed City of Centennial,* 3 P.3d 427, 438 (Colo.2000) ("[h]ome rule cities are not the sole creatures of the General Assembly.... They are created pursuant to constitutional authority."). In *Glennon Heights, Inc. v. Central Bank & Trust,* 658 P.2d 872, 877 (Colo.1983), we rec-

ognized that "the power to promulgate zoning regulations in furtherance of the general health, safety and welfare is reposed in the legislative branch of the state government, and any such legislative powers of *statutory cities* are derived through a delegation of state power" under section 31–23–301. (Emphasis added.) Because *Western Paving* addressed statutory provisions which are inapplicable here, it is not useful to resolve the case before us.[9]

The two cases relied on by the court of appeals are distinguishable from this one. Because neither case cited by the court of appeals creates an absolute right for development of a permitted use, we do not agree with its analysis.

### III.

Accordingly, we reverse the judgment of the court of appeals, and remand the case to the court of appeals with instructions to return the case to the district court for further proceedings consistent with this opinion.

Justice KOURLIS dissents, and Justice COATS joins in the dissent.

Justice KOURLIS dissenting:

The Majority concludes that the Colorado Springs Zoning Code appropriately and clearly grants the Planning Commission the "authority to deny a permitted use on the grounds that the use is incompatible with the surrounding area." Maj. op. at 1253. I view the criteria of compatability with the neighborhood to be insufficient grounds for denial of a lawful use. Accordingly, I respectfully disagree.

### I.

Courts sustain the denial of a zoning application "if there is a lack of evidence to show that certain of the required factors existed,

---

9. The statutory provisions in *Western Paving* are similar to sections 31–23–301 to –314, 9 C.R.S. (1999), which regulate the municipalities' zoning power. Home rule cities fall under the definition of "municipality" and are arguably subject to these statutory regulations. *See* § 31–1–101(6), 9 C.R.S. (1999). Whether these provisions limit a home rule city's zoning authority in any fashion depends on whether these provisions constitute a local or statewide concern. *See City & County of Denver v. State,* 788 P.2d 764, 767 (Colo.1990). We need not determine here whether these statutory provisions constitute a matter of local or statewide concern as they are not invoked in the case before us.

or if the evidence is in dispute as to one or more of these factors, and the city council determines the permit should be denied, then it would have to make specific findings of fact as to what factors were or were not established. Where a record supports the findings, a reviewing court must uphold the city council's action." *Bauer v. City of Wheat Ridge*, 182 Colo. 324, 327, 513 P.2d 203, 205 (1973).

Here, while opponents of the development plan raised concerns about increased traffic, safety for children and the elderly, and crime as negative consequences of the proposed development in front of both the Planning Commission and City Council, neither zoning authority acknowledged those factors in denying the development plan. Instead, both authorities relied only upon the general provisions of the development plan review criteria including whether or not the development was compatible with the neighborhood.

The trial court in this case held that the decision to zone the land in question as Planned Business District necessarily meant that the permitted uses for that District were in the best interests of the public health, safety, and general welfare; and that the City could not "attempt to reserve to itself the discretion to decide which of the complying land uses will be permitted." Therefore, the trial court held that the City's denial of permitted uses because they were incompatible with the surrounding neighborhood was inherently arbitrary and capricious, and that the City did not have discretion to refuse an authorized use of the property absent a legal rezoning.

While courts should not interfere with the decisions of a zoning authority absent a clear abuse of discretion, *see Board of County Comm'rs v. O'Dell*, 920 P.2d 48, 50 (Colo. 1996), neither should a court "stand idly by, and allow unrestricted exercise of authority by Boards, not granted by statute, or permit the arbitrary and unjustified exercise of discretion." *Western Paving Constr. Co. v. Board of County Comm'rs*, 181 Colo. 77, 82, 506 P.2d 1230, 1232 (1973) (internal citations omitted).

Review of a governmental body's decision pursuant to Rule 106(a)(4) calls into question the decision of the body itself, not just the district court's determination regarding the governmental body's decision. *See O'Dell*, 920 P.2d at 50. When, as here, the zoning authority's findings supporting its denial of the permit were brief and "extremely vague as to any substantial reason for its action" a denial of the permit may only be sustained if the record supports the finding. *Bauer*, 182 Colo. at 327, 513 P.2d at 205. The trial court in this case found that the record did not support the decision of the Planning Commission and I agree.

.

## II.

Land use regulation in general represents an uneasy compromise between private landowner rights and community interests. *See Board of County Comm'rs v. Conder*, 927 P.2d 1339, 1351 (Colo.1996) (Kourlis, J., dissenting). Zoning identifies the permissible and impermissible uses of specific parcels of property, and is accomplished through a formal process involving notice and opportunity for protest. *See id.* at 1345. While a landowner may not use the land in a manner conflicting with applicable zoning, the landowner must be entitled to make use of the land in a manner consistent with the zoning. *See id.* at 1352 (Kourlis, J., dissenting). If a permitted use becomes incompatible "either through an environmental concern or a change of circumstances ... the proper procedure is to amend the zoning resolution." *Western Paving*, 181 Colo. at 81, 506 P.2d at 1232.

The requirement that a landowner submit a development plan for approval denotes a modern trend in municipal planning that attempts to provide for more compatible and flexible development patterns in a city. *See Sherman v. City of Colorado Springs*, 763 P.2d 292, 296 (Colo.1988) (*Sherman II*). These plans necessarily vest discretion in a planning commission or city council. Such discretion must nonetheless be guided by sufficient standards. *See id.*

A zoning authority that denies approval of a development plan on the basis of an ordinance without adequate standards exceeds its jurisdiction. *See id.* at 297. While zoning

ordinances are often upheld as valid exercises of the police power to regulate public health, safety, and welfare, *see Zavala v. City and County of Denver,* 759 P.2d 664, 669 (Colo.1988), the exercise of such power must be guided so that any action taken by a city "in response to a land use proposal will be rational and consistent." *Beaver Meadows v. Board of County Comm'rs,* 709 P.2d 928, 936 (Colo.1985).

The Colorado Springs Zoning Code specifically allows the City to take into account the effect on the neighborhood. *See* § 4-6-602(C)(1) ("Will the project design be harmonious with surrounding land uses and neighborhood?") In my view, this standard is insufficient to provide "all users and potential users of land with notice of the particular standards and requirements" imposed by the City for plan approval. *Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village,* 790 P.2d 827, 832 (Colo.1990); *see also Bauer,* 182 Colo. at 327, 513 P.2d at 204 (holding a zoning authority acts in an arbitrary and capricious manner when it denies a permit meeting the general zoning qualifications solely because of the type of building to be constructed); *Kosinski v. Lawlor,* 177 Conn. 420, 418 A.2d 66, 69 (1979) (rejecting a denial of site plan approval based on "poor use of the site"); *East Lake Partners v. City of Dover Planning Comm'n,* 655 A.2d 821, 825 (Del.Super.Ct.1994) (finding the planning commission had no power to reject a site plan because the residents did not want the land used for a project that is a permitted use under the applicable zoning classification); *PRB Enters., Inc. v. South Brunswick Planning Bd.,* 105 N.J. 1, 518 A.2d 1099, 1102 (1987) (limiting a planning board's discretion by prohibiting denial of a permitted use).

### III.

We have addressed this issue before and I view the precedent of *Western Paving* as dispositive. In that case, the County Planning Commission reserved the right to impose conditions and safeguards on special permit applicants to ensure that the property use would "be in harmony with the character of the surrounding neighborhood ... and

otherwise to promote the health, safety, and welfare" of the county. *Western Paving,* 181 Colo. at 80, 506 P.2d at 1231. We held that such power was not intended "to serve as grounds for denial of lawful use." *Id.* at 81, 506 P.2d at 1231. "Rather, it is intended to give the Board authority to tailor a proposed use to the conditions of the district so as to protect the health, safety and welfare." *Id.,* 506 P.2d at 1231–32. *Western Paving* stands for the clear proposition that the designation of a permitted use in a particular zone affirmatively resolves the issue of whether the use is in harmony with the surrounding neighborhood. *See id.* at 82, 506 P.2d at 1232.

The Majority determines that the reasoning of *Western Paving* does not apply, because home rule cities operate by constitutional grant and need not comport with statutory limitations on zoning power. In my view, neither a home rule city nor a statutory city may engage in an impermissible denial of a right to use property consistent with zoning requirements. Neither may impose conditions that invite or allow arbitrary decision-making by the land use authority.

*Sherman v. City of Colorado Springs,* 680 P.2d 1302 (Colo.App.1983) (*Sherman I*), *aff'd,* 763 P.2d 292 (Colo.1988), dealt with a home rule city – in fact, the same home rule city that is a party to the present controversy. In *Sherman I,* the court of appeals held that when a city establishes a zone where a use is permitted by right, the zoning body cannot then reserve to itself "the discretion to decide which of the complying land uses will be permitted." *Id.* at 1304. "To interpret this development plan ordinance as giving the city the power to deny a lawful use of property runs contrary to the requirement of adequate standards." *Id.* A court should not allow the denial of a development plan on the basis of extraneous considerations when the applicant, as here, meets the legal requirements of the zoning ordinances. *See Sherman II,* 763 P.2d at 297.

### IV.

The City of Colorado Springs' rejection of Securcare's development plan based on its

incompatibility with the surrounding area clearly controverts applicable and valid precedent of this court and the court of appeals. The trial court properly concluded that the standards were insufficient and resulted in an arbitrary and capricious decision. In my view, compatability with neighborhood conditions is an issue that the land use authority should properly determine before the land use entity adopts zoning requirements for a particular area. Therefore, I would affirm the court of appeals and respectfully dissent from the Majority Opinion.

I am authorized to state that Justice COATS joins in this dissent.