**JACKSON & CO. (USA), INC.,**
**a Delaware corporation,**
**Plaintiff–Appellant,**

v.

**TOWN OF AVON, a municipal**
**corporation, Defendant–**
**Appellee.**

No. 06CA0298.

Colorado Court of Appeals,
Div. IV.

June 28, 2007.

Law Offices of Lawrence Kelly, Lawrence J. Kelly, Denver, Colorado, for Plaintiff–Appellant.

John W. Dunn & Associates, LLC, John W. Dunn, Elizabeth Pierce–Durance, Avon, Colorado, for Defendant–Appellee.

Opinion by Judge GRAHAM.

Plaintiff, Jackson & Co. (USA), Inc., appeals from the trial court's judgment permanently enjoining it from renting a duplex unit located in the Wildridge subdivision in the Town of Avon on a short-term basis. We affirm.

The Wildridge subdivision was platted and approved in 1981. The subdivision plat designated Jackson's property as a "duplex dwelling unit." The ordinance in effect at the time the subdivision plat was filed defined "two-family dwelling" or "duplex" as "[a] detached principal building containing no more than two (2) dwelling units sharing a common wall no less than twenty (20) per cent between both dwelling units or sharing a common ceiling and floor, in whole or in part, connecting two (2) dwelling units." Ord. No. 79–12, art. III, § 3.1(21)(b). The subdivision plat defined "dwelling unit" as

> [o]ne or more rooms in addition to a kitchen and bath facilities, in a permanent building, designed for use as a dwelling exclusively by one family or one or more human beings as an independent housekeeping unit and independent of other such families: *Such dwellings shall not include* mobile homes, *hotels, lodge units,* clubs, hospitals, temporary structures such as tents, railroad cars, trailers, motor homes or campers, campers, street cars, metal prefabricated sections or similar units.

(Emphasis added.)

The ordinance defined "dwelling" as "[a] permanent building or portion thereof which is used as the private residence or sleeping place of one or more human beings, *but not including hotels, lodge units,* clubs, hospitals, temporary structures such as tents, railroad

cars, trailers, street cars, metal prefabricated sections, or similar units." Ord. No. 79–12, art. III, § 3.1(21) (emphasis added).

"Hotel, Motel, and Lodge" was defined as "[a] building containing three (3) or more accommodation units, intended for temporary occupancy of guests." Ord. No. 79–12, art. III, § 3.1(30). "Accommodation unit" was defined as "[a]ny room or group of rooms without cooking facilities designed for or adapted to occupancy by guests and accessible from common corridors, walks, or balconies without passing through another accommodation unit or dwelling unit." Ord. No. 79–12, art. III, § 3.1(1).

In September 2004, Jackson purchased a duplex unit located in Wildridge. Jackson bought the property while it was under construction and modified the layout to create six individual bedroom-bathroom suites, each with a walk-in closet. The duplex had one kitchen and parking for five cars. There were no cooking facilities in the individual bedroom-bathroom suites.

Jackson's president testified that he bought the duplex to use as a second vacation home for his family. In addition, he stated that he intended to let the property for short-term rentals to help offset the expense of owning it. In October 2004, Jackson applied for, and obtained, a retail sales tax license, stating its "business" was "short term lodging."

Jackson advertised the property on the internet for short-term rentals (weekly preferred), with rates ranging from $2900 to $9000 weekly, depending on the season. The advertisement stated that the property could sleep sixteen people and was "ideal" for large families or a corporate retreat. Jackson's president testified that he approved such language because "[i]t sounded like a good marketing ... scenario." Except for four weeks during the holidays, when occupied by the president's family, the duplex was available to rent the entire year. The property rented for a total of seventy-eight days from October 2004 to October 2005, and Jackson received $54,708.36 in rental income.

In August 2005, Avon enacted ordinance 05–08, which redefined "lodge" as "a building containing common kitchen and dining facilities occupied by paying guests on a temporary (thirty-one (31) days or less) basis but not including a bed and breakfast residence." The recitals in ordinance 05–08 state that "the Wildridge subdivision is predominantly residential and was not intended to include 'lodges,' as that term is commonly defined and understood," and that "the Town Council finds and determines that 'lodges' or 'lodge units' ought to be defined as 'a dwelling occupied by paying guests on a temporary (thirty-one (31) days or less) basis so as to clarify the original intent of the Wildridge PUD." The recitals further state that "the Town Council finds and determines that 'lodge' or 'lodge unit,' as so defined, is similar to the uses otherwise prohibited by the Wildridge PUD and therefore not permitted as a use within the Wildridge subdivision since its approval."

Jackson filed suit against Avon seeking a declaratory judgment that the short-term rental of the duplex constituted a lawful non-conforming use and requesting an injunction against the enforcement of the ordinance. Avon filed a counterclaim alleging ordinance violations and requested a permanent injunction prohibiting Jackson from renting its property on a short-term basis. The parties filed cross-motions for preliminary injunction. After a hearing, the trial court found that the property was "held out primarily as a lodge for short-term rental," which was prohibited by the subdivision plat note, as interpreted by the 1979 ordinance, and that such use represented a change from the residential use for which it was designed. The court entered a preliminary injunction restraining Jackson from renting its property on a short-term basis. Upon request of the parties, the trial court made the injunction permanent and directed entry of a final judgment.

On appeal, Jackson contends that the trial court erred in concluding that its rental operation was not a valid nonconforming use. Specifically, Jackson argues that neither the subdivision plat nor the 1979 ordinance specifically excluded short-term rental of its du-plex and that the rental operation did not render the duplex a "lodge" under the terms of the subdivision plat and 1979 ordinance. We disagree.

■ A nonconforming use is one which lawfully existed before the enactment of zoning ordinances and is maintained after the effective date of the ordinances, although it presently does not comply with the zoning restrictions applicable to the district in which it is situated. *Anderson v. Bd. of Adjustment for Zoning Appeals,* 931 P.2d 517, 519 (Colo.App.1996).

Nonconforming uses are entitled to protection under the law: "Notwithstanding any other provision of law to the contrary, a local government shall not enact or enforce an ordinance, resolution, or regulation that requires a nonconforming property use that was lawful at the time of its inception to be terminated or eliminated by amortization." Section 38–1–101(3)(a), C.R.S.2006.

Courts interpret the ordinances of local governments, including zoning ordinances, as they would any other form of legislation. *See Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village,* 790 P.2d 827, 830 (Colo. 1990); *Glatz v. City & County of Denver,* 735 P.2d 899, 901 (Colo.App.1986). As such, zoning ordinances are subject to the general canons of statutory interpretation. *See Steamboat Springs Rental & Leasing, Inc. v. City & County of Denver,* 15 P.3d 785, 787 (Colo.App.2000).

■ Our primary task in interpreting statutes and municipal enactments is to give effect to the intent of the drafters, which we do by looking to the plain language. *See Farmers Group, Inc. v. Williams,* 805 P.2d 419, 422 (Colo.1991). If courts can give effect to the ordinary meaning of words used by the drafters, the ordinance should be construed as written, in accordance with the principle that courts presume that the legislative or municipal body meant what it clearly said. *City of Colorado Springs v. Securcare Self Storage, Inc.,* 10 P.3d 1244, 1249 (Colo.2000). If the statutory language is clear and unambiguous, the language should not be subjected to a strained or forced interpretation. *City of Colorado Springs v.*

*Securcare Self Storage, Inc., supra,* 10 P.3d at 1249. Moreover, courts must refrain from rendering judgments that are inconsistent with that intent. *City of Colorado Springs v. Securcare Self Storage, Inc., supra,* 10 P.3d at 1249.

Although there is no express prohibition of weekly or short-term rentals found anywhere in the subdivision plat or the 1979 ordinance, we conclude that Jackson's short-term rental of the duplex constituted an impermissible use of the duplex as a "lodge," as that term was defined by the 1979 ordinance. Specifically, the duplex was designed to contain six separate bedroom-bathroom suites that did not have their own "cooking facilities"; each bedroom-bathroom suite was "accessible from common corridors, walks, or balconies without passing through another" bedroom-bathroom suite; and the duplex was intended to be used "for temporary occupancy of guests." *See* Ord. No. 79–12, art. III, § 3.1(1), (30). As relevant here, *Black's Law Dictionary* defines "guest" as "[a] person who pays for services at an establishment, esp. a hotel or restaurant." *Black's Law Dictionary* 714 (8th ed.2004).

▮ Jackson's president conceded that he intended to rent the duplex on a weekly basis, and his modification of the duplex's layout, in addition to the advertisement of the duplex, certainly reflected that intent. Although the duplex was used occasionally as a family vacation home, this does not alter the fact that the duplex was intended, and indeed designed, for the "temporary occupancy of guests." *See* Ord. No. 79–12, art. III, § 3.1(30). The definition of "lodge" does not require that it be used solely for the temporary occupancy of guests. Nor does the definition provide that occasional occupancy by nonguests or nonpaying guests, such as family or friends, disqualifies a building as a "lodge," when all other criteria of a "lodge" are met.

The plain language of the subdivision plat and zoning ordinance defined permitted use of a "dwelling" to exclude use of the dwelling as a hotel or lodge unit. Because the subdivision plat and ordinance specified that the permitted use of the subject property was a duplex, and that such use of the duplex as a

hotel or a lodge was not permitted, their objective import clearly was to prohibit uses inconsistent with the residential character of the area. *See Town of Alta v. Ben Hame Corp.,* 836 P.2d 797, 801 (Utah Ct.App.1992); *see also* Ord. No. 79–12, art. V, § 5.1(f) ("In residential ... districts, business or commercial activity is prohibited at all times except that limited home occupation offices may be allowed under special review uses in certain residential areas as specified in Section 3.2."). This reading of the subdivision plat and ordinance comports with the general purposes those regulations serve. Among the objectives to be served by zoning is to avoid mixing together of industrial, commercial, business, and residential uses. *Cf.* § 31–23–301, C.R.S.2006. The subdivision plat and ordinance should thus legitimately maintain the character of a residential neighborhood.

Jackson's use of the duplex for short-term rentals is not consistent with the residential character of the neighborhood. We see little distinction between Jackson's rental business and that of an establishment where short-term shelter is the essential commodity being marketed. On the contrary, Jackson's business has characteristics of a commercial enterprise. Its clientele are transient. Jackson advertised for short-term rentals and corporate retreats. All its rentals were less than thirty days. Jackson's retail sales tax license states that its "business" is "short term lodging." These factors are indicia of a business or commercial enterprise. *See Seaton v. Clifford,* 24 Cal.App.3d 46, 51, 100 Cal.Rptr. 779, 781–82 (1972). Jackson's reliance on cases purportedly standing for the proposition that "residential use" does not exclude short-term rentals, *see, e.g., Haan v. Mountain Queen Condo. Ass'n,* 717 P.2d 969, 970 (Colo.App.1985), *rev'd,* 753 P.2d 1234 (Colo.1988), does not persuade us to reach a contrary conclusion.

We conclude that the trial court did not err in holding that Jackson's use of the duplex for short-term rentals constituted a "lodge" and, therefore, violated both the subdivision plat's and the ordinance's prohibition against lodges in the residential neighborhood of Wildridge. Jackson's use of the duplex was not

a lawful nonconforming use, and the injunction properly issued.

The judgment is affirmed.

Judge VOGT and Judge HAWTHORNE concur.